IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIRANDA GEIST, individually and on behalf of a class of similarly situated person,**<br><br>*Plaintiff,*<br><br>v.<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**<br><br>*Defendant.* | Case No. 2:21-cv-04447-JDW |

### MEMORANDUM

The question before the Court: If an insured individual reduces his limits for underinsured motorist coverage, but adds a car to the policy at a later date, is the election of lower limits enforceable? Based on the facts before the Court, the answer is "yes." The lower limits apply. The Court will therefore grant State Farm Mutual Automobile Insurance Company's motion to dismiss.

### I.   BACKGROUND

#### A.   The Policies

The parties have stipulated to the applicable facts. On September 16, 2017, Miranda Geist was in a car accident while a passenger in a car. She settled a claim against the driver of the car, but that did not provide enough insurance to pay for the damage and injuries she suffered. So she looked to the underinsured motorist ("UIM") coverage of her parents, Kevin and Karen Iwanski.

The Iwanskis have one policy with State Farm. It took effect on March 10, 2010. When issued, the policy insured two cars and provided liability coverage of $100,000 per person/$300,000 per accident. At the time of the issuance, Mr. Iwanski signed an "Election of Lower Limits of Coverage" and selected lower UIM coverage limits of $50,000 per person/$100,000 per accident. On January 3, 2011, Mr. Iwanski signed a document titled "Acknowledge of Coverage Selection," affirmatively selecting the same UIM coverage limits ($50,000 per person/$100,000 per accident). The Iwanskis and Ms. Geist do not dispute the selection was valid at that time. On January 8, 2011, the Iwanskis removed a car from the policy. On February 28, 2013, they added a car back to the policy. They did not request a change in UIM coverage limits and renewed the policy every six months until Ms. Geist's accident in 2017. At the time of the accident in 2017, the policy applied to two cars.

During its coverage, State Farm sent the Iwanskis Declarations Pages with "renewal premiums." (*E.g.*, ECF No. 1-1 at 44.) The Declarations Pages each state "YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET . . . AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU WITH ANY SUBSEQUENT RENEWAL NOTICE." (*E.g., id.* at 39.) The Declarations Pages reference the policy number: 686 2835-C10-38 with an affixed letter. When State Farm made changes to the policy (and potentially at other times), the affixed letter increased. For example, iteration 686 2835-C10-38**L** would become 686 2835-C10-38**M**. (*Compare id.* at 28 *with id.* at 37.)

### B. Procedural History

Ms. Geist filed this case on September 10, 2021. On October 8, 2021, State Farm removed the matter to the Court. On October 29, 2021, State Farm filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 8.) That motion is now ripe for review.

## II. LEGAL STANDARD

Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is proper if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, at 555; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). However, under Fed. R. Civ. P. 9(b), when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake." The Court must disregard legal conclusions, conclusory statements, and rote recitals of the elements of a cause of action. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); Iqbal, 556 U.S. at 678.

### III.   DISCUSSION

Section 1731 of Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* ("MVFRL") requires insurers that provide motor vehicle insurance to offer uninsured ("UM") and UIM coverage. However, section 1734 allows individuals to reduce their UM and UIM coverage.

Sections 1731 and 1734 provide, in relevant part:

> (a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be ***delivered or issued*** for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless [UM or UIM] coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of [UM or UIM] coverages is optional.

*Id.* § 1731(a) (emphasis added).

> A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

*Id.* § 1734. The Pennsylvania Supreme Court has explained what sections 1731 and 1734 require of insurers, and this Court, sitting in diversity, is bound by its interpretation. *See Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n.3 (3d Cir.1985).

Section 1731's "plain meaning is apparent from its language." *Blood v. Old Guard Ins. Co.*, 594 Pa. 151, 164 (2007) (quote omitted). It "mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734." *Id.* (same). Once it offers the appropriate amount of UM and UIM coverage, section 1734 permits a named insured to "lower her statutorily provided UIM coverage limits by requesting" to do so in writing. *Id.* (same). "The insurance company's obligation to *issue* a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request." *Id.* at 164–65 (emphasis in original).

In other words, once it has offered the appropriate UM and UIM coverage upon issuance of a policy and received a valid request to reduce it, the insurer's obligations under section 1734 are met, and the reduction is valid. *See id.* So long as a change to a pre-existing policy does not require the "delivery or issuance of a policy," otherwise valid section 1734 reductions are not impacted by later changes. *Id.* at 165–166 ("the MVFRL does not provide any support . . . that [the Plaintiff's] change of liability coverage had an effect on their otherwise valid Section 1734 reduction."); *see also Guglielmelli v. State Farm Mut. Auto. Ins. Co.*, 628 F. App'x 137, 140 (3d Cir. 2015); *Nationwide Mut. Ins. Co. v. Merdjanian*, 195 F. App'x 78, 82 (3d Cir. 2006) (section 1731 applies only to the "deliver[y] or issu[ance] for delivery" of a "liability insurance policy.").

There is no dispute the Iwanskis reduced the coverage limits of the State Farm policy. The issue before the Court, therefore, is whether State Farm issued a new policy when the added a car to the policy on February 28, 2013. It did not. It just modified a pre-existing policy. The State Farm Policy itself contemplates changes, including the addition and subtraction of a car. Each Declarations Page, including the one State Farm sent in when the Iwanskis added the car, explains that it and any subsequent renewal notices are part of the same policy. (ECF No. 1-1 at 56.) In addition, when the Iwanskis added the car to the policy's coverage, State Farm sent the same type of Declarations Page it always sent, providing for a "*renewal* premium." (*Id.* (emphasis added).) And, when the Iwanskis added a car to the policy, the policy number did not change.

The Third Circuit, in unpublished opinions, and district courts have reached the same conclusion. *See Guglielmelli v. State Farm Mut. Auto. Ins. Co.*, 628 F. App'x 137, 140 (3d Cir. 2015) (adding a car did not require a new section 1734 reduction); *Nationwide Mut. Ins. Co. v. Merdjanian*, 195 F. App'x 78, 82 (3d Cir. 2006) (same); *Alcedo v. State Farm Mut. Auto. Ins. Co.*, 391 F. Supp. 3d 452, 456 (E.D. Pa. 2019) (same). Several district courts have also held that even total waivers of UM and UIM (which are reviewed more closely than mere reductions) carry forward, regardless of future changes to the policy, unless a policy-holder makes an affirmative change to that waiver. *See Cahall v. Ohio Cas. Ins. Co.*, No. CIV.A. 14-1246, 2015 WL 4407563, at *4 (W.D. Pa. July 20, 2015) (increasing coverage did not require a new waiver); *Glazer v. Nationwide Mut. Ins. Co.*, 872 F. Supp. 2d 396, 400 (M.D. Pa. 2012) (adding a car did not require a new waiver).

These cases align with the Court's analysis of the issue, and the Court finds them persuasive.

The Pennsylvania Supreme Court's decision in *Barnard v. Travelers*, 216 A.3d 1045 (Pa. 2019), does not change the Court's analysis. In *Barnard*, the plaintiff purchased UIM coverage but waived stacking, as Section 1738 of the MVFRL permitted her to do. *See id.* at 1047. Two years later, she increased her UIM coverage, but she did not fill out a new stacking waiver. After a car accident, the plaintiff argued that the insurer was required to get a new stacking waiver when she increased her UIM coverage. *Id.* The Pennsylvania Supreme Court agreed. *Id.* at 1051.

The Supreme Court's decision in *Barnard* turned on the language of Section 1738(c), which applies to a "named insured **purchasing**" UM or UIM coverage. 75 Pa. C.S.A. § 1738(c) (emphasis added). In contrast, Section 1734 applies to the "**issuance**" of coverage. 75 Pa. C.S.A. § 1734 (emphasis added). As a matter of statutory construction, the Court presumes that the General Assembly's use of two different words in Sections 1734 and 1738 indicates its intent to have the two statutory sections apply in different circumstances. *See In re Federal-Mogul Global Inc.*, 684 F.3d 355, 373 (3d Cir. 2012) ("[W]here the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent." (quote omitted)); *Halchak v Dorrance Twp. Bd. of Supervisors*, Case No. 3:18-cv-1285, 2019 WL 4795650, at * 7 n.2 (M.D. Pa. Sept. 30, 2019) ("Different words used in

7

the same, or a similar, statute are assigned different meanings whenever possible" (quote omitted)).

When a named insured increases the amount of UIM and/or UM coverage under a policy—like she did in *Barnard*—she purchases additional coverage and triggers Section 1738(c). But that purchase of additional coverage does not lead to the "issuance" of a new policy; it just changes the policy already in existence. So it does not trigger Section 1734. The Supreme Court's decision in *Barnard* drew the same distinction. It noted that cases interpreting Section 1734 did not require a new waiver because Sections 1731 and 1734 refer to the "issuance," rather than the "purchase" of coverage. *See Barnard*, 216 A.3d at 1053, n.8. And it distinguished those cases (rather than overruling or criticizing them) on that basis.

Ms. Geist also points to *Weilacher v. State Farm*, 65 A.3d 976 (Pa. Super. 2013) as justification for her theory. *Weilacher* held that the insurer improperly provided reduced UIM coverage because the insured individual never sent in any section 1734 reduction form, not because of a "purchasing" requirement in sections 1731 and 1734. *Id.* at 983. Without a valid reduction form, the Court reasoned, the insurer could not provide reduced UIM coverage. There is no dispute the Iwanskis provided State Farm with a valid section 1734 reduction.

## IV. CONCLUSION

Ms. Geist seeks to import the requirements of section 1738 into sections 1731 and 1734. But the text requires no such thing. Accordingly, the Court will dismiss her claims. And, because no amendment to the Complaint would change

8

the Court's analysis, the Court will do so with prejudice. An appropriate Order follows.

                                      **BY THE COURT:**

                                      */s/ Joshua D. Wolson*
                                      **JOSHUA D. WOLSON, J.**

December 9, 2021